## IN THE MATTER OF THE ALLEGED ESCHEAT OF REAL ESTATE OF GUSSIE MILLS, DECEASED.

Superior Court of New Jersey
Chancery Division

Decided July 28, 1965.

*Mr. Arthur J. Sills,* Attorney General of New Jersey (*Mr. Charles J. Kehoe,* appearing), for the State.

*Mr. Felix J. Verlangieri* for City of Orange.

HERBERT, J. S. C. Gussie Mills died on July 7, 1962. She owned real estate at 424 Parkinson Terrace, Orange. Although she had made a will, it contained no effective disposition of real or personal estate and she left no one to take by descent or intestacy. Thus her property passed to the State of New Jersey by escheat. To what extent, if at all, did the real estate become exempt from local real estate taxes as a result of the State's ownership? That is the basic question presented here, this being a case in which the State of New Jersey is the plaintiff and the City of Orange the defendant.

After Miss Mills died her executrix paid taxes to the City of Orange through the second quarter of 1963. Being then advised by a representative of the Attorney General that title had passed to the State, the executrix stopped paying, but the city continued to assess the property. Its records show taxes unpaid from the end of the second quarter of 1963.

When Gussie Mills died the property was occupied in part by a tenant at a monthly rental of $30. The tenancy continued until May 1964. After that the premises were vacant while the State's ownership continued. A public sale was held March 6, 1964 as called for by the statute (*N. J. S.* 2A:37-3 *et seq.*), but a deed was not delivered to the successful bidders until December 7, 1964. The purchasers from the State, when bidding on the property and thereafter taking title, made no commitment to pay taxes for which they would not have been responsible in the absence of a voluntary assumption of liability. Protection for them against tax liens was furnished as a practical matter by depositing in escrow a part of the purchase price, and disbursement of that deposit awaits the filing of this opinion.

The fundamental questions in the case are answered by statutory provisions. The State became owner of the property

when Gussie Mills died. Such immediate transfer of title is provided for expressly by *N. J. S.* 2A :37–1 which reads :

"When the attorney general is informed or has reason to believe that any person has died seized of real estate within the state, without having devised it and without heirs capable of inheriting the same, he shall bring an action, summary or otherwise, in the superior court to establish whether or not such real estate has escheated to the state. The action shall be tried with a jury, and it shall be determined in the action what real estate, if any, escheated to the state. Title to real estate escheating to the state shall pass to the state on the death of such person."

The action in the Superior Court called for by this section was in fact brought. The result was a judgment of December 6, 1963 that the realty formerly owned by Gussie Mills had escheated to the State. Although it can be said that between the death and the judgment no one knew with certainty of the State's ownership, the passing of title on the date of death did take place and the judgment, instead of operating as a conveyance served to confirm what had happened a year and a half earlier. *Den ex dem. Van Kleek v. O'Hanlon,* 21 *N. J. L.* 582 (*E. & A.* 1845), affirming 20 *N. J. L.* 31 (*Sup. Ct.* 1842), is authority for the proposition that title held by one who dies without heirs vests in the State on the instant of death. Thus our statute merely restates in legislative form the common law rule.

 When the State acquired ownership at Miss Mills' death (July 7, 1962) the property became tax exempt under *N. J. S. A.* 54 :4–3.3, a section which provides in part :

"Except as otherwise provided by article one of this chapter (§ 54 :4–1 et seq.), the property of the State of New Jersey ; and the property of the respective counties, school districts and taxing districts used for public purposes, or for the preservation or exhibit of historical data, records or property ; and property acquired by the municipalities through tax title foreclosure or by deed in lieu of foreclosure, if not used for private purpose, shall be exempt from taxation under this chapter, but this exemption shall not include real property bought in for debts or on foreclosure of mortgages given to secure loans out of public funds or out of money in court, which property shall be taxed unless devoted to public uses."

The city has argued against the exemption claimed for the property by the State. The various grounds argued have been considered, but must be rejected.

██ It is unnecessary to consider the effect of taxes assessed before Miss Mills died but unpaid at the time of death. Those taxes were all paid by the executrix. Though the State seeks a refund, the payments were voluntary. It is likely that the executrix was ignorant of the ultimate fact of escheat when she made her payments, but also likely she had some knowledge about difficulty in locating heirs. Any awareness of the situation by the tax collector would be unexpected. It is useless, however, to speculate about what payor and payee knew at the time of each payment; there is no evidence of the extent of their knowledge or lack of knowledge. I conclude the State's claim for refund should be denied on the basis of the general rule that money voluntarily paid cannot be recovered. 40 *Am. Jur., Payment,* § 157, *p.* 820 *et seq.*

█ Turning from taxes paid to those unpaid, my conclusion that the property was exempt while owned by the State leads to this result on the facts: Claims of the city for unpaid taxes based upon assessments made as of October 1, 1962, October 1, 1963 and October 1, 1964 are invalid and should be cancelled; on those assessment dates the property was owned by the State and could not be validly assessed.

Nothing said in this opinion is intended to prejudice any proceedings which may be brought — or perhaps have been brought — to add an omitted assessment to the tax roll and thereby assess the former Mills property against Mr. and Mrs. DiGiore from December 7, 1964, the date they acquired title from the State. See *N. J. S. A.* 54:4-63.12 and 63.26.